**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**

FILED

DEC 1 2 2014

U.S. DISTRICT COURT-WVND
CLARKSBURG, WV 26301

**CHRISTOPHER WAYNE WILLIAMS,**

      **Petitioner,**

**v.**                                  **Civil Action No. 2:14 CV 37**
                                           **Criminal Action No. 2:13 CR 10**

**UNITED STATES OF AMERICA,**

      **Respondent.**

## REPORT AND RECOMMENDATION/OPINION

### I.
### Introduction

On May 19, 2014, Christopher Wayne Williams ("Williams"), proceeding *pro se*, filed a Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody. (Civil Action No. 2:14 CV 37, Docket No. 1; Criminal Action No. 2:13 CR 10, Docket No. 45.)[1] On May 20, 2014, the undersigned entered an Order directing the Government to respond to Williams' motion. (Docket No. 49.) The Government filed its response on June 17, 2014. (Docket No. 52.) Williams filed his *pro se* motion for default judgment on July 7, 2014. (Docket No. 53.) The Government filed its response to the motion for default judgment on July 17, 2014. (Docket No. 56.)

This matter is ripe for consideration without any further pleadings.

The undersigned now issues this Report and Recommendation on Williams' motion without holding an evidentiary hearing. For the reasons stated below, the undersigned recommends that the

---

[1]From this point, all docket numbers refer to entries in Criminal Action No. 2:13CR10.

District Judge deny and dismiss grounds 1, 2, 3B, 3C, 3D, 3E, and 4 of Williams' motion.

## II
## Facts

A.    *Conviction and Sentence*

Williams initially appeared before the Court on a criminal complaint charging him with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1) and possession of a stolen firearm in violation of 18 U.S.C. § 922(j). (Docket No. 1.) Brian Kornbrath ("Kornbrath"), the federal public defender, was appointed to represent him. (Docket No. 12.) Thereafter, on March 19, 2013, Williams was indicted. (Docket No. 13.) The indictment charged him with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1) (Count One) and possession of a stolen firearm in violation of 18 U.S.C. § 922(j) (Count Two). *(Id.)*

On April 10, 2013, Williams signed a written plea agreement in which he agreed to plead guilty to Count One of the Indictment, charging him with being a felon in possession of a firearm. (Docket No. 24.) In the agreement, Williams waived his right to appeal and collaterally attack any actual sentence that was the same as or equal to a guideline sentence with a base offense level of twenty (20) or lower. Specifically, Williams' plea agreement contained the following language concerning his waiver:

> The above paragraph notwithstanding, the defendant will retain his appellate rights and rights to collaterally attack his sentence only with respect to any sentence imposed using a base offense level 21 or higher. This reservation of rights is designed to ensure that the United States and the defendant retain the benefits of the plea agreement. It is not intended to represent the defendant's estimation of what an appropriate or reasonable sentence would or should be. Nor does this reservation of rights prevent the defendant from arguing for a sentence below the aforementioned Guideline offense level. The United States will retain the right to appeal any sentence imposed. *(Id.* at 4.*)*

Williams appeared before the undersigned on April 17, 2013, in order to enter his plea of

guilty. (Docket No. 22.) At the time of his plea, Williams was thirty-nine (39) years old, had earned a GED, and stated he was able to read and write English. (Docket No. 41 at 9:5-10.) He further told the Court that his mind was clear; he understood what the Court had told him or asked him; his high blood pressure and clotting conditions and the medicines he took for them "were not in any way affecting [his] ability to hear and understand and respond to [the Court's] questions, make decisions about [his] case or talk with Mr. Kornbrath about [his] case." (*Id.* at 10: 25-11:13.) Williams testified he had not been treated for mental illness within the last six (6) months and had not been treated for addiction to controlled substances within the last sixty (60) days. (*Id.* at 9:22-10:5.) Williams affirmatively stated he did not "suffer from any physical, emotional or psychiatric condition which affects [his] ability to hear and understand and respond to [the Court's] questions, talk with Mr. Kornbrath about [his] case, or make decisions about [his] case." (*Id.* at 11: 13-16.) Then, the following colloquy occurred:

> The Court: Did you and Mr. Kornbrath discuss that under 18 U.S.C. Section 3742 you have a right to appeal your conviction and sentence to the Fourth Circuit Court of Appeals within 14 days of the announcement of your sentence.
>
> The Defendant: Yes, sir.
>
> The Court: Did you also discuss with Mr. Kornbrath that you may file a motion under 28 U.S.C. Section 2255 collaterally attacking or challenging your sentence and how that sentence is being carried out?
>
> The Defendant: Yes, sir.
>
> The Court: Under paragraph 12 of - - I'm sorry - - 13 of your written plea agreement, you give up your right to directly appeal the sentence and conviction, and you give up your right to collaterally attack or challenge it if the actual sentence is the equivalent of a guideline - calculated sentence using a base

offense level; that is, a base offense level means the base offense before any adjustments, of 21 or - - of 20 or lower, you give it up. You only keep it if - - those rights - - if your base offense level is 21 or higher. Do you understand that?

The Defendant:          Yes, sir. (Docket No. 41, pp. 16-17.)

Williams told the Court the following: he and his attorney got along all right as lawyer and client; they discussed the charges in the indictment; they discussed the elements of the offenses that the government would have to prove in order for him to be found guilty; they reviewed the evidence the government had and would use to prove him guilty; and he, on his own, came to a conclusion the government's evidence was sufficient to prove him guilty beyond a reasonable doubt. (*Id.* at 13:17-15:1.)

The Court asked, and Williams testified, that there was no question he asked his attorney that his attorney refused or failed to answer and there was nothing he asked his attorney to do that he thought his attorney improperly refused to do. In short, Williams told the Court he was "completely satisfied with the legal assistance, counseling and advice and actions that Mr. Kornbrath" had provided him. When asked if he could think of anything his lawyer should have done and did not do or did and he wished his lawyer had not done it, Williams testified there was nothing. (*Id.* at 17:9-18:7.)

On the critical issue of sentencing, Williams testified his attorney, Mr. Kornbrath, did not promise him a specific sentence that he would receive from Judge Bailey at sentencing. (*Id.* At 17:20-22.)

III
Contentions

A.      *Issues and Responses*

The Petitioner (Williams) raises the following issues:

4

1. <u>PSR [Presentence Investigation Report]</u>

   a. Counsel "[d]id not bring up PSR objections at sentencing."

   b. Counsel "[d]id not ask if I objected to PSR before filing that I did not."

   c. "As pro se objections state I tryed [sic] call and no one would take my calls."

   d. "Asked him at sentencing and he said 'was to [sic] late to do anything about PSR now.'"

2. <u>Guns</u>

   a. "Didn't challenge stolen firearm enhancement."

   b. "Didn't challenge 3-7 firearm enhancement."

   c. "Didn't challenge stolen gun. How was it stolen? I was never charged."

   d. "Did not bring up that I told him to fight cause Carla stole gun. I did not and told me was 'no use to cause I was getting what they wanted give me from year before when pled state charges.'"

   e. "Double jeopardy cause done time in state for the other guns."

3. <u>Would not do his job</u>

   a. "Didn't file appeal."

   b. "Not challenging prior conviction from state."

   c. "Played on his phone 'angry birds and facebook' during court."

   d. "Would not get transcripts from detention hearing like was told to cause Special Agent ATF Kenneth Grace perjured himself."

   e. "Would not prove I wasn't one who got into gun safe for gun was Carla and said I would take lie detector anything but said 'your getting time cause last year.'"

4. <u>Lying to me</u>

   a. "Told me get 20 years if didn't take plea cause they wanted me from year before where I got out of Fed indictment by pleading state."

b.    "Told me get PR Bond if I plead guilty."

The United States in response contends:

1.    Williams waived his right to file a motion pursuant to 28 U.S.C. § 2255.

2.    Williams' arguments "his PSR objections never were addressed by counsel or the Court are baseless, and his counsel's advice was not erroneous in any respect."

3.    Williams "'failed to advise the Court about any concern for his counsel's actions or alleged failures to act. . . . [and therefore] cannot "show his counsel's performance 'fell below an objective standard of reasonableness' in light of the prevailing professional norms." Chapman, 593 F.3d at 367.'"

4.    Williams' argument that counsel "lied" to him about his plea agreement is "[w]ithout any substantiating evidence that the alleged statements were made by counsel" and petitioner as therefore "failed to establish the prejudice prong of Strickland."

IV.
Analysis

A.    *Waiver*

1.    <u>Law Governing Waivers of Direct Appeal and Collateral Attack Rights</u>

"[T]he guilty plea and the often concomitant plea bargain are important components of this country's criminal justice system. Properly administered, they can benefit all concerned." <u>Blackledge v. Allison</u>, 431 U.S. 63, 71 (1977). However, the advantages of plea bargains are only secure when "dispositions by guilty plea are accorded a great measure of finality." *Id.* The Fourth Circuit has recognized that the Government often secures waivers of both appellate and collateral attack rights "from criminal defendants as part of their plea agreement." <u>United States v. Lemaster</u>, 403 F.3d 216, 220 (4th Cir.2005).

Courts have routinely held that "defendants can waive fundamental constitutional rights such as the right to counsel, or the right to a jury trial." <u>United States v. Marin</u>, 961 F.2d 493, 496 (4th Cir.1992). Specifically, the Fourth Circuit has held that "a waiver-of-appeal-rights provision in a

6

valid plea agreement is enforceable against the defendant so long as it is 'the result of a knowing and intelligent decision to forgo the right to appeal.'" United States v. Attar, 38 F.3d 727, 731 (4th Cir.1994) (citations omitted). However, a defendant still retains the right to appellate review on limited grounds, such as when a sentence above the maximum penalty provided by statute is imposed or when a sentence is imposed based on a constitutionally impermissible factor. Id. at 732. Furthermore, the Attar court recognized that a defendant cannot "fairly be said to have waived his right to appeal his sentence" on the ground that he was wholly deprived of counsel during sentencing procedures. Id.

Eleven years later, the Fourth Circuit determined there was no reason to distinguish between waivers of appellate rights and waivers of collateral attack rights. Lemaster, 403 F.3d at 220 n. 2. The Fourth Circuit noted that all courts of appeals to have considered the issue have "held that the right to attack a sentence collaterally may be waived so long as the waiver is knowing and voluntary." Id. at 220. The Lemaster court did not address whether the same exceptions that were noted by the Attar court apply to a waiver of collateral attack rights, but it did note that it saw "no reason to distinguish" between the two. Id.at 220 n. 2; see also United States v. Cannady, 283 F.3d 641, 645 n. 3 (4th Cir.2000) (collecting cases where the court has determined that waivers of § 2255 rights are generally valid).

The Fourth Circuit has not yet issued a binding decision defining the scope of collateral attack waivers and so has not yet imposed on this Court a standard governing "the extent to which an ineffective assistance of counsel claim can be precluded by a § 2255 waiver." Braxton v. United States, 358 F.Supp.2d 497, 502 (W.D.Va.2005). However, several courts have held that collateral attack waivers should be subjected to the same conditions and exceptions applied to waivers of direct

appellate rights. <u>Cannady</u>, 283 F.3d at 645 n. 3 (collecting cases). Furthermore, most courts of appeals have determined that waivers of collateral attack rights encompass claims "that do not call into question the validity of the plea or the § 2255 waiver itself, or do not relate directly to the plea agreement or the waiver." <u>Braxton</u>, 358 F.Supp.2d at 503.

2.    <u>Law Governing Whether a Waiver is Knowing and Intelligent</u>

The Fourth Circuit has held that the determination of whether a waiver of appellate and collateral attack rights is "knowing and intelligent" "depends 'upon the particular facts and circumstances surrounding [its making], including the background, experience, and conduct of the accused.'" <u>Attar</u>, 38 F.3d at 731 (quoting <u>United States v. Davis</u>, 954 F.2d 182, 186 (4th Cir.1992)). This determination is often made upon reviewing the "adequacy of the plea colloquy" and determining, in particular, "whether the district court questioned the defendant about the appeal waiver." <u>United States v. Blick</u>, 408 F.3d 162, 169 (4th Cir.2005). However, an ultimate decision is "evaluated by reference to the totality of the circumstances." <u>United States v. General</u>, 278 F.3d 389, 400 (4th Cir.2002).

From a totality of circumstances evidenced by the record in this case, the undersigned finds Williams knowingly and intelligently waived his right to directly appeal or collaterally attack his sentence or the manner in which it was determined.    <u>Attar</u>, *supra* at 731.

The District Judge announced his tentative findings during the sentencing hearing, to wit:

> . . . The base offense level is 20, a two-level enhancement for the number of firearms, a two-level enhancement for stolen firearm, and a four-level enhancement for possession of the weapon in connection with another felony offense, resulting in an adjusted offense level of 28.  Less two levels for acceptance or responsibility. (Docket No. 40, p. 4.)

Granting of the Government's motion for a third level, the District Judge announced:

. . . [R]esulting in a total offense level of 25.  With a total offense level of 25, and a criminal history category of III, the guidelines call for incarceration of 70 to 87 months. (Docket No. 40, pp. 5-6.)

The actual sentence imposed was seventy (70) months.  It was less than the one-hundred, twenty (120) month  maximum called for by the statute of conviction and was at the low end of a guideline sentence ,which was calculated on a base offense level before adjustments of twenty (20).  (Docket No. 41, p. 16-17.)  Accordingly, the sentence of seventy (70) months met the conditions upon which Williams' waiver was based.

Not only did Williams tell the Court under oath that he understood the conditions of his waiver of his direct appeal and collateral attack rights as contained in paragraph thirteen (13) of his plea agreement, he told the Court that he had fully discussed his right of direct appeal and collateral attack with his attorney.  The Court specifically asked Williams: "And did you intend to give up those valuable rights and retain them as under the conditions set forth in paragraph 13 of your plea agreement?"  Williams responded: "Yes, sir."  *Id.*

B.    *Ground Four - Counsel Lied*

Defendant's sworn representations made at a plea hearing "carry a strong presumption of verity" and "constitute a formidable barrier against any subsequent collateral proceedings." Blackledge, 431 U.S. at 74. Therefore, guilty pleas are not normally subject to collateral attack, but can be so challenged on the ground that the plea was not knowing or voluntary. Bousley v. United States, 523 U.S. 614, 621–22 (1998). A defendant may attack the voluntary nature of his plea by demonstrating that he received ineffective assistance of counsel. Tollett, 411 U.S. at 267. However, "in the absence of extraordinary circumstances, ... allegations in a § 2255 motion that directly contradict the petitioner's sworn statements made during a properly conducted Rule 11 colloquy are

9

always 'palpably incredible' and 'patently frivolous or false.'" Lemaster, 403 F.3d at 221 (citations omitted).

The Court finds Williams' statements relative to Ground Four "palpably incredible" and "patently false." *Id.* Under Ground Four, Williams avers: A) "Told me get 20 years if didn't take plea cause they wanted me from year before when I got out of fed indictment by pleading state" and B) "Told me get PR Bond if I plead guilty." Contrary to these assertions, Williams gave the following testimony during his plea hearing:

| | |
|---|---|
| The Court: | Did you and he discuss the maximum statutory penalty that you subject yourself to by pleading guilty to this charge? |
| The Defendant: | Yes, sir. |
| The Court: | Now, I want you to look at paragraph two of your written plea agreement, that outlines the maximum statutory penalty. And by pleading guilty to count one, you subject yourself to the possibility of a term of imprisonment of not more than ten years .... Do you understand that sir? |
| The Defendant: | Yes, sir. (Docket No. 41, p.15.) |
| The Court: | Did Mr. Kornbrath promise you a specific sentence from Judge Bailey at the time of your sentencing? |
| The Defendant: | No, sir. (Docket No. 41, p.17.) |
| The Court: | Has anyone, ***including your own attorney***, made any other or different promises or assurances of any kind to you, other than what are contained in that plea agreement, in order to convince you to plead guilty to count one? (emphasis added by the undersigned.) |
| The Defendant: | No, sir. |
| The Court: | Has anyone attempted in any way to force you to plead guilty? |
| The Defendant: | No, sir. |

| The Court: | Has anyone threatened you in order to get you to plead guilty? |
|---|---|
| The Defendant: | No, sir. |
| The Court: | Has anyone threatened anyone who is close to you in a personal way in order to get you to plead guilty? |
| The Defendant: | No, sir. |
| The Court: | Is your decision to plead guilty your own free, voluntary and knowing and intelligent decision? |
| The Defendant: | Yes, sir. |
| The Court: | Do you believe you are gulty of the facts and elements of the offense, felony offense, charged against you in count one of this indictment? |
| The Defendant: | Yes, sir. (Docket No. 41, p. 23-24.) |
| The Court: | Did you understand that while Mr. Kornbrath can show you how the Guideline chart works and can even use the chart and assist you in understanding where you might fall in the Guideline chart, you do not have a right to take what he showed you as a promise or a guarantee to you that the District Judge would apply Mr. Kornbrath's estimated sentence under the Guidelines as the actual sentence that the Judge imposes? |
| The Defendant: | Yes, sir. |
| The Court: | And if Mr. Kornbrath was incorrect for any reason, do you understand that you're not going to be permitted to withdraw your guilty plea, because of that? |
| The Defendant: | Yes, sir. (Docket No. 41, p. 27-28.) |

The undersigned concludes Ground Four, allegations that his attorney lied in order to convince him to plead guilty, is barred by Williams' knowing and voluntary waiver of his rights to file a collateral attack. In addition, the allegations that his attorney lied to him in order to convince him to plead

guilty are patently false in light of his contrary statements under oath during his plea hearing.

C. *Ground Two - Guns*

The undersigned finds Williams' claims that his counsel was ineffective for not challenging the firearm enhancement, not challenging the 3-7 firearm enhancement, not challenging that the gun was stolen, and not challenging the enhancements on the grounds that it was double jeopardy, "palpably incredible" and "patently frivolous or false." Lemaster, 403 F.3d at 221 (citations omitted).

Williams entered in to a stipulation in paragraph 9 of his plea agreement. The stipulation provided:

> Pursuant to Sections 6B1.4 and 1B1.4 and 1B1.3 of the Guidelines, the parties hereby stipulate and agree that on or about March 15, 2013, at or near Mill Creek, Randolph County, West Virginia, within the Northern District of West Virginia, the defendant, having been convicted of a crime punishable by imprisonment for a term exceeding one (1) year; that is to say, on or about December 8, 1994, defendant Christopher Wayne Williams was convicted in the Circuit Court of Cabell County, West Virginia, in case no.: 94-F-221, of Burglary, did knowingly possess, in and affecting commerce, a firearm, to wit: a Savage rifle, model Mark II, .22 caliber, serial number 0453515. The parties further stipulate and agree that a **two-level increase applies for defendant's possession of 3-7 firearms**, in accordance with 2K2.1(b)(1)(A); and that a **two-level increase applies for a stolen firearm** in accordance with 2K2.1(b)(4)(A); and a **four-level increase applies for defendants possession of a firearm in connection with another felony** in accordance with 2K2.1(b)(6)(B). The applicable base offense level is **20**, and the **adjusted offense level (subtotal) is 28.** The Court is not bound by the above stipulation and is not required to accept the same. Mr. Williams understands and agrees that should the Court not accept the above stipulation, Mr. Williams will not have the right to withdraw his plea. (Docket No. 24, p. 3-4.)(emphasis added by the undersigned.)

At sentencing, the District Judge based his actual sentence on his announced tentative findings which tracked the stipulation contained in paragraph 9 of the plea agreement, to wit:

> I will announce my tentative findings as to the applicable guidelines. The base offense level is **20**, a **two-level enhancement for the number of firearms**, a **two-level enhancement for stolen firearm**, and a **four-level enhancement for possession of the weapon in connection with another felony offense**, resulting in

an **adjusted offense level of 28.** (Docket No. 40, p. 4.)(emphasis added by the undersigned.)

Simply stated, the District Judge gave Williams the exact sentence for which he had bargained with the Government. After getting exactly what he bargained for in his plea agreement, Williams now says he would have had his attorney take a completely inconsistent position at sentencing by challenging each of the enhancements to which Williams had agreed. "Ethical considerations and rules of court prevent counsel from making dilatory motions, adducing inadmissible or perjured evidence, or advancing frivolous or improper arguments, ...." <u>McCoy v. Court of Appeals of Wisconsin, Dist. 1</u>, 486 U.S. 429, 435 (1988).

Williams cannot now claim he did not understand the matters in paragraph 9 of his written plea agreement. During the plea colloquy, Williams was specifically interrogated about that portion of his agreement as follows:

| | |
|---|---|
| The Court: | Now, let's turn to paragraph nine. In paragraph nine, you agree to a number of factual provisions and they are all set out in there. Basically they're all the elements of the offense and they are certain matters that increase by various levels under the guidelines of the conduct level. In other words, they take you from a base offense level of 20 to an adjusted offense level of 28 under the guidelines. Do you understand that? |
| The Defendant: | Yes, sir. |
| The Court: | A stipulation of fact is your way of agreeing with the Untied States that these facts have been admitted, that **there doesn't have to be any proof of the facts, and that the judge can rely on the stipulation of proof of those facts**. Do you understand that? |
| The Defendant: | Yes, sir. |
| The Court: | The judge doesn't have to go along with that stipulation. He has a right to find his own facts based on the presentence |

13

| | report and evidence that may be presented to him. Do you understand that? |
|---|---|
| The Defendant: | Yes, sir. |
| The Court: | And if he should reject any of the facts that you and the government have agreed to stipulate to in paragraph nine, you will not then have a right to change your mind and withdraw your guilty plea. Do you understand that? |
| The Defendant: | Yes, sir. |
| The Court: | An you wouldn't have that right even if it resulted in you receiving a higher sentence within the statutory maximum than would be called for under your adjusted offense levels set forth in this stipulation. Do you understand that? |
| The Defendant: | Yes, sir. (Docket No. 24, p. 21-23)(emphasis added by the undersigned.) |

Moreover, to the extent Williams claims it was ineffective assistance of counsel to not challenge the firearm guideline enhancements "cause done time in state of the other guns, those claims have no merit. First, it is clear Williams stipulated he possessed a stolen firearm which brought him squarely under the language of the 2k2.1(b)(4)(A) enhancement: "If any firearm was stolen, increase by 2 levels." Second, it is clear Williams stipulated he possessed between 3 and 7 firearms which brought him squarely under the language of the 2k2.1(b)(1)(A) enhancement: "If the offense involved three or more firearms, increase as follows: 3-7 add 2." Third, it is clear that Williams stipulated a **four-level increase applies for defendants possession of a firearm in connection with another felony** in accordance with 2K2.1(b)(6)(B). Fourth, to the extent Williams complains the enhancement for possession of a firearm in connection with another felony constitutes "Double jeopardy cause done time in state for the other guns", that claim is without merit. "Under the doctrine of dual sovereignty federal prosecutions are not barred by a previous state prosecution

for the same or similar conduct." <u>U.S. v. Christmas</u>, 222 F.3d 141, 145 (4th Cir. 2000) citing <u>Abbate v. United States</u>, 359 U.S. 187, 79 S.Ct. 666, 3 L.Ed. 2d 729 (1959).

D.     *Petitioner Has Not Demonstrated Ineffective Assistance of Counsel in Ground One*

1.     <u>Standard Governing Claims of Ineffective Assistance of Counsel</u>

The Supreme Court has set forth a two-prong test for determining whether a convicted defendant's claim of ineffective assistance of counsel warrants the reversal of his conviction. <u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984). First, "the defendant must show that counsel's performance was deficient." *Id.* Second, "the defendant must show that the deficient performance prejudiced the defense." *Id.* These two prongs are commonly referred to as the "performance" and "prejudice" prongs. <u>Fields v. Att'y Gen. of Md.</u>, 956 F.2d 1290, 1297 (4th Cir. 1992).

To satisfy the "performance" prong, the defendant must demonstrate that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment." <u>Strickland</u>, 466 U.S. at 687. However, a reviewing court does not "grade" trial counsel's performance, and there is a strong presumption that "counsel's conduct falls within the wide range of reasonable professional assistance." <u>Carter v. Lee</u>, 283 F.3d 240, 249 (4th Cir. 2002). Essentially, the reviewing court must not "second-guess" counsel's performance and must "evaluate counsel's performance 'from counsel's perspective at the time.'" <u>Hunt v. Lee</u>, 291 F.3d 284, 289 (4th Cir. 2002). Furthermore, the standard of reasonableness is objective, not subjective. See <u>Strickland</u>, 466 U.S. at 688.

To satisfy the "prejudice" prong, the defendant must demonstrate that "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687. Therefore, if counsel's errors have no effect on the judgment, the conviction should not be reversed.

See at 691. A defendant who alleges ineffective assistance of counsel following a guilty plea has an even higher burden: "he must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985); Hooper v. Garraghty, 845 F.2d 471, 475 (4th Cir. 1988). The Fourth Circuit has recognized that if a defendant "cannot demonstrate the requisite prejudice, a reviewing court need not consider the performance prong." Fields, 956 F.2d at 1297.

The Fourth Circuit has set forth two categories of decisions made by trial counsel. First, there are "personal" decisions that require consent from the defendant, such as the decision to enter a guilty plea, the decision to waive a trial by jury, the decision to appeal, and the decision of whether to testify at trial. See Sexton v. French, 163 F.3d 874, 885 (4th Cir. 1998). The second category includes decisions that "'primarily involve trial strategy and tactics,' such as 'what evidence should be introduced, what stipulations should be made, what objections should be raised, and what pre-trial motions should be filed.'" Id. (quoting United States v. Teague, 953 F.2d 1525, 1531 (11th Cir. 1992)). Accordingly, "[t]here is a strong presumption that counsel's attention to certain issues to the exclusion of others reflects trial tactics rather than sheer neglect." Harrington v. Richter, 131 S. Ct. 770, 790 (2011) (citations and internal quotation marks omitted).

2.    Williams raises four separate allegations of ineffective assistance of counsel post plea:

  a. Counsel "[d]id not bring up PSR objections at sentencing."

  b. Counsel "[d]id not ask if I objected to PSR before filing that I did not."

  c. "As pro se objections state I tryed [sic] call and no one would take my calls."

  d. "Asked him at sentencing and he said 'was to [sic] late to do anything about PSR now.'"

16

As an initial matter, these claims are insufficiently pled. "Habeas petitions must meet heightened pleading requirements . . . ." See McFarland v. Scott, 512 U.S. 849, 856 (1994). Accordingly, a petitioner must present evidence that his claims have merit. See Nickerson v. Lee, 971 F.2d 1125, 1136 (4th Cir. 1992), abrogation on other grounds recognized by Yeatts v. Angelone, 166 F.3d 255 (4th Cir. 1999). There is no averment by Williams identifying what in the presentence report he was complaining about or wanting his attorney to complain about. If Williams was complaining about the gun enhancements in the presentence report, those complaints would have no chance of success for the reasons previously stated herein. Here, Williams has not provided any factual support for these claims; accordingly, Williams has failed to meet his burden under § 2255.

Second, Williams cannot meet the prejudice prong of the Strickland test. He has not shown and cannot "show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, *supra* at 59.

During Williams' plea colloquy he was asked:

| | |
|---|---|
| The Court: | Is your decision to plead guilty your own, free, voluntary and knowing and intelligent decision? |
| The Defendant: | Yes, sir. |
| The Court: | Do you believe your are guilty of the facts and elements of the offense, felony offense, charged against you in count one of this indictment? |
| The Defendant: | Yes, sir. (Docket No. 41, pl 23-24.) |
| The Court: | By entering a plea of guilty to count one, District Judge Bailey will cancel the trial that is now scheduled. Do you understand that? |
| The Defendant: | Yes, sir. |
| The Court: | And as a result of that cancellation, there will be no trial and |

| | you will have given up your rights associated with that trial. Is that what you want to do? |
|---|---|
| The Defendant: | Yes, sir. |
| The Court: | Is that your own free, voluntary, knowing and intelligent decision, sir? |
| The Defendant: | Yes, sir. (Docket No. 41, p. 29-30.) |

Near the conclusion of the plea hearing and after Williams entered his plea of guilty, Kenneth Grace ("SA Grace"), special agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives ("BATF"), testified providing a factual background in support of the proposed plea. SA Grace testified Special Agent Ella Snyder ("SA Snyder") of the BATF opened an investigation of Williams on March 5, 2013, when Carla Williams, wife of Christopher Williams, reported she had seen him with a firearm and she did not know where it came from. She acknowledged that they had done some work under the business name of CNC Restoration in Harrison, Lewis, Pleasants and Raleigh counties. Carla Williams sent SA Snyder photos of the rifle and by tracing the serial number it was revealed that it had been purchased at a Walmart by Donna Scarff who reported it and other things had been stolen from her house. She also reported having had CNC Restoration in her residence prior to the things turning up missing. With the information, BATF executed a search warrant at the Williams' residence in Mill Creek on March 15, 2013, recovering the rifle and other items stolen from the Scarff residence. Williams was present and was arrested.

The Court then inquired of Williams:

| The Court: | Mr. Williams, were you able to hear and follow the testimony of Special Agent Grace? |
|---|---|
| The Defendant: | Yes, sir. |
| The Court: | Is there anything about your conduct in this matter as |

18

described by Mr. Grace that you disagree with?

The Defendant:        No, sir.

From what little information Williams provided in his petition, it now appears that he is complaining that his counsel was ineffective during the sentencing process as follows:

> Notwithstanding the stipulation in his plea agreement, Williams now contends he did not break into the building and physically steal the gun in question. According to Williams, it was Carla who broke in and stole the gun. He cannot and does not challenge that the gun was stolen, just who stole it. He does not challenge that he had possession of the stolen gun and knew that it was stolen. Therefore, his lawyer should have challenged the gun enhancement and he would have received less incarceration.

Such a position is totally inconsistent with what he told the Court while under oath during his plea hearing.

E.      *Williams has not demonstrated ineffective assistance of counsel in grounds Three B, C, D, or E.*

Claims Three B, C, D and E are all without merit and must be dismissed. They are a rehash of claims Williams made in other sections of his petition. Each of them is a repeat of his theme of claims:

1.      He should not have received the enhancements because he was not the one who went in to the safe and stole the guns. It was Carla who did that.

2.      He should not have received an enhancement or even been federally prosecuted because the state already prosecuted, convicted, and sentenced him for the same activity.

As previously noted, these themes or claims have no merit. Specifically, with respect to claim Three B, "Not challenging prior conviction from state," this claim has no merit because Williams stipulated to the fact of his prior conviction and a prior state conviction and sentence does

not bar a federal prosecution for federal crimes arising out of the same transaction.  U.S. v. Christmas, *supra* at145.

With respect to claim Three C that his counsel "Played on his phone 'angry birds and facebook' during court," the claim is inadequately pled and Williams has not shown how his attorney playing "angry birds and face book" on his phone prejudiced him.  Hill v. Lockhart, *supra* at 59 and Hooper v. Garraghty, *supra* at 475.

With respect to claim Three D that his counsel "Would not get transcripts from detention hearing like was told to cause Special Agent ATF Kenneth Grace perjured himself," the claim is inadequately pled ( McFarland v. Scott, *supra* at 856)  and Williams has not shown how not getting a hearing transcript of SA Grace's testimony at the detention hearing prejudiced Williams in his case. Hill v. Lockhart, *supra* at 59 and Hooper v. Garraghty, *supra* at 475.   If it goes to the number of guns, possession of the stolen gun, and theft of the guns, those matters have already been disposed of in this report and recommendation which need not be repeated.

With respect to claim Three E that his attorney "Would not prove I wasn't one who got into gun safe for gun was Carla and said I would take lie detector anything but said 'your getting time cause last year'", this claim has been previously discussed and disposed of in this report and recommendation.  It does not matter that Carla may have gone in to the safe to steal the guns.  It only matters that Williams at some point as a previously convicted felon possessed the firearm knowing it was stolen.  He stipulated to that in his plea agreement.

However, in Ground Three A, Williams claims his counsel was ineffective for failing to file an appeal.  The record reflects that Williams made a *pro se* inquiry to the Fourth Circuit Court of Appeals relative to the status of his appeal.  On motion of the United States, the Fourth Circuit issued

an order dismissing the inquiry as no appeal was timely filed. Accordingly, the issue of whether Williams instructed his attorney to file an appeal in his behalf is a question of fact that cannot be resolved without a hearing.

## V.
### Recommendation

For the reasons set forth herein it is respectfully **RECOMMENDED** that:

Grounds One, Two, Three A, Three B, Three C, Three D and Four of Williams petition be dismissed without a hearing.

Within **fourteen (14) days** after being served with a copy of this report and recommendation, any party may file with the Clerk of Court written objections identifying those portions of the recommendation to which objection is made and the basis for such objections. A copy of any objections shall also be submitted to the Honorable Frederick P. Stamp, Jr., United States District Judge. Failure to timely file objections to this recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such recommendation. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Court directs the Clerk of the Court to provide a copy of this Report and Recommendation and a copy of this Order to all counsel of record as provided in the Administrative Procedures for Electronic Case Filing in the United States District Court for the Northern District of West Virginia. The Court further directs the Clerk of the Court to mail a copy of this Report and Recommendation to the *pro se* Petitioner Christopher Wayne Williams.

21

## VI.
### Order

With respect to Ground Three E, the same is set for a telephonic evidentiary hearing before the undersigned on January 22, 2015 at 10:00 a.m. at the Clarksburg point of holding court. If Williams is still incarcerated in the Federal system, the United States Attorney is directed to arrange the telephone conference call connecting Williams to the court for the hearing. If Williams has been released from incarceration, Williams is responsible for getting himself to the hearing which will be held in the third floor hearing room of the United States Court, 500 West Pike Street, Clarksburg, West Virginia, 26301. The United States Attorney is directed to make Brian Kornbrath, counsel for Williams, available for testimony during the hearing. Williams may call witnesses to appear and testify at the hearing concerning the sole issue of whether he or someone in his behalf asked Mr. Kornbrath to file an appeal and when, where and how such a request, if any, was made. If witnesses are unwilling to voluntarily appear and testify, Williams may use the subpoena power of the court to require them to attend the hearing and take the oath. In order for witnesses to be subpoenaed, Williams shall file his written list of the names and residential addresses of any such witnesses to be subpoenaed with the Court by not later than December 26, 2014. At the completion of the hearing the undersigned will render an appropriate Report and Recommendation to the District Judge.

It is so **ORDERED**.

Dated: December 12, 2014

JOHN S. KAULL
UNITED STATES MAGISTRATE JUDGE

22